RECEIVED
IN ALEXANDRIA, LA.

AUG 2 5 2014

TONY R. MOORE, CLERK
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| EARL E. RICHEY, JR. | : | DOCKET NO. 2:14-1081 |
| VS. | : | JUDGE TRIMBLE |
| CHESTNUT PETROLEUM AND EXPLORATION, INC., ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is "Defendant Mark A. Plummer's Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support" (R. #6) wherein the mover defendant seeks to be dismissed from the instant suit because of lack of personal jurisdiction. For the following reasons, the motion will be denied.

## FACTUAL ALLEGATIONS

In this suit, plaintiff, Earl Richey, alleges that defendant, Mark A. Plummer, President of Chestnut Petroleum, Inc. f/k/a Chestnut Petroleum and Exploration, Inc. ("Chestnut") offered and sold to him a ten (10%) working interest in certain oil and gas leasehold interests and wells located in Calcaiseu Parish Louisiana. A portion of the working interest in the Layne #20 Well[1] was purchased directly from Chestnut and another portion was purchased directly from Mark Plummer. Richey accepted the offer and paid the purchase price of $14,250 for the entire 10% working interest and made the check payable to Mark Plummer; the check included the following notation:

---

[1] The Layne #20 Well was referenced in an ugust 26, 2005 letter from Chestnut to Richey as the GEB UH RA SU Layne La. #20 Well, DOC Serial No. 228479 located in the English Bayou Field, Calcasieu Parish, Louisiana (Upper Hackberry Unit a/k/a Field Wide Unit).

Mark Plummer
Chestnut Petroleum, Inc.
5050 Quorum Drive
Suite #325
Dallas, Texas 75254

The sale was confirmed by letter dated August 26, 2005 by Plummer; the letter was signed by Plummer in his capacity as President and was on Chestnut letterhead. The check was endorsed as follows:

PAY TO THE ORDER OF
STERLING BANK
DALLAS, TX 75201
xxxxxxxxxx
FOR DEPOSIT ONLY
CHESTNUT PETROLEUM INC
LAYNE #20
xxxxxxxxxx

Richey alleges that the Layne #20 Well has been operating since March 16, 2008, but that he has not been paid any of the proceeds of production from this well or in any other zones found in the Layne #20 well. On August 14, 2013, counsel for Richey made demand via letter upon Chestnut for an accounting of all production from all zones found in the Layne #20 well from 2005 to present. By letter dated August 27, 2013, counsel for Chestnut responded that Richey was not entitled to any of the proceeds of production. Richey asserts he is entitled to an accounting for all production and proceeds from the Field Wide Unit known as the Upper Hackberry Unit, English Bayou Field, and and to be paid ten (10%) percent of the proceeds of production from the Layne #20 well as well as all production from all zones from the Upper Hackberry Reservoir found in the Layne #20 well together with interest thereon from the date such payments were due.

In this lawsuit, Richey seeks an accounting for all production from the Field Wide Unit since

August of 2005, ten (10%) percent of the proceeds from the Layne #20 well as well as all production

from all zones in the Upper Hackberry reservoir with interest, and attorney fees and penalties.

## LAW AND ANALYSIS

Defendant, Mark Plummer, maintains that he must be dismissed because this court does not

have personal jurisdiction over him. He notes that he is a Texas resident and that in his individual

capacity, with respect to the claims asserted by plaintiff, he has never had any meaningful contacts

with Louisiana.  Plummer argues that plaintiff's complaint does not contain sufficient facts to

support the exercise of personal jurisdiction over him in this action and thus, he must be dismissed

pursuant to Federal Rule of Civil Procedure 12(b)(2).

The Due Process Clause "operates to limit the power of a State to assert *in personam*

jurisdiction over a nonresident defendant."[2] The "constitutional touchstone" of the inquiry to

determine if personal jurisdiction can be exercised is whether the defendant "purposefully

established minimum contacts in the forum State."[3]

In instances in which a non-resident defendant moves to dismiss an action for lack of

personal jurisdiction, the complainant bears the burden of proving that jurisdiction is appropriate

over the non-resident.[4] A federal court may exercise personal jurisdiction over a nonresident

defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over the

defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process

---

[2] Helicopteros Nacionales deColombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 (1984).

[3] Asahi Metal Ind. Co. v. Super. Ct., 480 U.S. 102, 108-09, 107 S.Ct. 1026 (1987).

[4]  Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008).

under the United States Constitution.[5] Because Louisiana's long-arm statute has been interpreted to extend to the limits of due process, the Court need only determine whether subjecting the defendant to suit in Louisiana would be consistent with constitutional due process.[6] The Louisiana Long-Arm Statute is to be interpreted liberally in favor of finding jurisdiction,[7] and is to extend to the full limits of due process under the fourteenth amendment.[8]

Constitutional due process permits the exercise of personal jurisdiction over a nonresident defendant when: (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice.[9]

Personal jurisdiction can be general or specific.[10] If a defendant's contacts with the forum state are "continuous and systematic," a court may exercise general jurisdiction over any action brought against that defendant, regardless of whether the action is related to the forum contacts.[11]

---

[5] Clemens v. McNamee, 615 F.3d 374, 378 (5th Cir. 2010).

[6] See Petrol. Helicopters, Inc. v. Avco Corp., 834 F.2d 510, 514 (5th Cir. 1987).

[7] Thompson v. Great Midwest Fur. Co., 395 So.2d 840, 843 (La.App. 1st Cir. 1981); Latham v. Ryan, 373 So.2d 242, 244 (La.App. 3rd Cir. 1979).

[8] Austin v. North American Forest Products, 656 F.2d 1076, 1089 (5th Cir. 1981); Standard Fittings Co. v. Sapag, S.A. 625 F.2d 630, 639-41(5th Cir. 1980), cert. denied, 451 U.S.910, 101 S.Ct. 1981 (1981); Adcock v. Surety Research and Investment Corp., 344 So.2d 969, 971 (La.1977).

[9] See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464, 472-478 (1985); see also Clemens, 615 F.3d at 378; Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002).

[10] Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266 (5th Cir. 2006).

[11] Hall, 466 U.S. at 414-415, 104 S.Ct. 1868.

If a defendant has relatively few contacts, a court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."[12]

In his motion, Plummer argues that his contacts with the state of Louisiana have been solely in his capacity as a corporate representative of Chestnut. Plummer relies on the fiduciary shield doctrine which holds that an individual's transaction of business solely as a corporate officer does not create personal jurisdiction over that individual.[13] Plummer further argues that this court's assumption of jurisdiction over him would offend traditional notions of fair play and substantial justice.

*Minimum contacts with Louisiana*

General jurisdiction is appropriate only when a non-resident defendant's contacts with the forum state are "substantial, continuous, and systematic."[14] "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction."[15] Defendants argue that plaintiff has failed to plead sufficient facts of "substantial, continuous, and systematic" contacts by Plummer with Louisiana. As to general jurisdiction, plaintiffs allege that Plummer has had substantial, continuous and systematic contacts with Louisiana for years. First, he has had a personal interest in the minerals underlying the Field Wide Unit since 1989.Plummer was a licensed petroleum engineer and a former employee of Sun Oil Company, who was the previous owner and operator of the same oil, gas and mineral leases affecting the Field Wide Unit. Plummer oversaw all the oil and gas operations and

---

[12] Id. at 414 & n. 8, 104 S.Ct. 1868.

[13] See Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985).

[14] Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008).

[15] Id.

production from the Field Wide Unit and continuously worked at the actual site of the Field Wide

Unit.  Plummer sent Richey an informational packet which provided that Plummer had both

engineered and operated the Field Wide Unit in Calcasieu Parish, Louisiana since 1989.[16]

Plaintiff also notes that Plummer was named as a co-borrower in a Fifth Modification of the

Loan which affected the mineral interests at issue in this suit.  The original loan, effective as of

August 31, 2010, was between Chestnut as borrower and Plummer as co-borrower, and Sovereign

Bank. Thus, plaintiff argues that Plummer purposefully availed himself of the privileges of

conducting business in Louisiana by knowingly and voluntarily entering into an ongoing relationship

through his execution of the loan documents. Plummer was also named as a defendant in a lawsuit

filed in 2002 in the 14th Judicial District Court in Calcasieu Parish.  Plummer was a surety for a debt

of Chestnut. Thus, plaintiff maintains that Plummer in his individual capacity has purposefully

directed activities towards Louisiana and has availed himself of the privileges of conducting business

activities in Louisiana.

Plaintiff further argues that the court has specific jurisdiction over Plummer because of the

sale of his personal inventory or interests in the Layne #20 well to Richey.  Plummer relies on the

fiduciary shield doctrine in this case which shields a corporate representative from personal or

individual jurisdiction if his activities were purely in a representative capacity. Plaintiff relies on

Quasha v. Shale Dev. Corp.,[17] which held that personal jurisdiction may be exercised over a non

resident defendant when the cause of action concerns the breach of an alleged contract to transfer

real rights in minerals located in Louisiana.

---

[16]  Plaintiff's exhibit 1-A attached to Richey's Affidavit.

[17] 667 F.2d 483 (5th Cir. 1982).

Plummer argues that Quasha is not applicable because it did not consider the fiduciary shield doctrine which Plummer asserts came into existence after Quasha. In Quasha, the plaintiff asserted jurisdiction over two individual defendants under the Louisiana Long-Arm Statute.[18] The plaintiff, a New York resident advertised the sale of mineral interests in properties located in Louisiana. Shale Development Corporation, a Nevada corporation, through its president, Delbert Thomas, a California resident requested a bid packages from Quasha's Louisiana agent, who mailed back to Thomas a brochure, invitation to submit a bid and bid reply sheet. Thomas submitted a bid via mail which Quasha accepted via telegram conditioning the acceptance on the placement of earnest money in escrow. By telegram, Thomas acknowledged the acceptance but failed to follow through with the earnest money. Hence, a lawsuit was filed in Federal Court against the corporation and Thomas.

Defendants moved to dismiss based on lack of personal jurisdiction. The District Court granted the motion finding that plaintiff failed to establish certain "minimum contacts" between the defendant and the forum state of Louisiana. The court further concluded that even if such a prima facie showing could be made, it would not be "fair" to require defendants to defend the suit in Louisiana. Upon appeal, the Fifth Circuit reversed finding that plaintiff established sufficient minimum contacts with Louisiana to support an inference that the non-resident defendants intended to purposefully avail themselves of the benefits of conducting business in Louisiana, and further concluding that requiring that defendants litigate in Louisiana did not offend traditional notions of fair play and substantial justice.

Significant to this court is the Fifth Circuit's reasoning that Louisiana has a legitimate and

---

[18] La. Rev. Stat. Ann. § 13:3201(A)(1)(transacting any business in this state) and (A)(5) (having an interest in, using or possessing a real right on immovable property in this state).

7

reasonable interest in providing a forum for the sale of mineral interests located within the state. While we recognize that there is a Texas choice of law provision in a 2003 joint venture agreement and a preformation subscription agreement, this alone does not detract from the fact that Louisiana mineral rights are involved and this state has a legitimate and reasonable interest in providing a forum for the sale of mineral interests in this state. While Plummer repeatedly urges the court to accept that he was only acting on behalf of his corporation, according to the 2005 Letter Agreement, the sale of mineral interests also involves his own "personal inventory". We conclude this based on the language in the August 26, 2005 letter which states follows: "I will also sell an additional 5 units to you out of my inventory at $950 per unit. This will make your total purchase in the Layne #20 Recompletion of 10 units at a total price of $14,250."[19]  In other words at least one half of the sale included his own personal ownership interest in the working mineral interest.  Therefore, Plummer was also acting on his own behalf and not just as a corporate representative. Thus, we find that Plummer cannot hide behind the fiduciary shield doctrine, and we further find that he has purposefully availed himself of the benefits of the forum state.

Furthermore, Plummer is no stranger to Louisiana.  He has operated and/or functioned in some capacity in the state of Louisiana since 1989 with respect to this particular piece of property and has had a personal and professional interest in the minerals underlying the Field Wide Unit since 1989.  We find that defending this suit in Louisiana would not cause him any hardship or inconvenience that would rise to the level of a denial of due process. Thus, we find that the maintenance of this lawsuit will not offend traditional notions of fair play and substantial justice and Plummer could reasonably foresee being hailed into a Louisiana court upon his alleged failure to

---

[19]  Plaintiffs' exhibit 1-B, R. #17-2.

perform under the contract.

## CONCLUSION

For the reasons set forth above, the motion to dismiss for lack of personal jurisdiction will

be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 2 5th day of

August, 2014.

 

 

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE