UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **EARL E. RICHEY, JR.** | : | DOCKET NO. 2:14-cv-01081 |
| **VS.** | : | JUDGE TRIMBLE |
| **CHESTNUT EXPLORATION & PRODUCTION INC ET AL** | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is a Motion to Transfer Venue filed on October 6, 2014, by the defendants, Chestnut Exploration & Production, Inc. and its president Mark Plummer (hereinafter "Chestnut," "Plummer," or collectively "defendants"). The motion is opposed by the plaintiff Earl E. Richey, Jr. (hereinafter "Richey" or "plaintiff"). For the reasons provided below, the defendants' motion is hereby **DENIED**.

### I.
#### BACKGROUND

*A. Facts and Procedural History*

In early 2003 the plaintiff was contacted by Mark Plummer, President of Chestnut Petroleum Inc. about investing in a Joint Venture for the development and production of, among others, the "Layne #20" oil and gas well in Calcasieu Parish, Louisiana.[1] Doc. 25, att. 2, p. 3; Doc. 17, att. 2, p. 2. In August of that year, the plaintiff agreed to invest and to that end executed a Preformation Subscription Agreement and a Joint Venture Agreement[2] encompassing the terms agreed to by the parties, namely that the plaintiff would share in the proceeds obtained from the

---

[1] The Layne #20 Well was referenced in an August 26, 2005, letter from Chestnut to Richey as the GEB UH RA SU Layne La. #20 Well, DOC Serial No. 228479 located in the English Bayou Field, Calcasieu Parish, Louisiana (Upper Hackberry Unit a/k/a Field Wide Unit).

[2] The Preformation Subscription agreement contained a provision stating that its execution would be "deemed for all purposes as the execution of the Joint Venture Agreement by the undersigned to the same extent and effect as if the undersigned has signed the Joint Venture Agreement…." Doc. 25, att. 2, p. 10.

sale of any oil and gas produced from the Layne#20 Well. Doc. 25, att. 2, p. 4. The Joint Venture Agreement contained a provision stating that it would "be governed by…the laws of the State of Texas" and included a forum selection clause stating that "venue with respect to any legal action with respect to this Agreement shall be in Collin County, Texas." Doc. 25, att. 1, p. 8.

This initial 2003 agreement (Preformation Subscription Agreement), which was the only agreement that the plaintiff ever actually signed prior to 2005 (see discussion *infra*), was between the plaintiff and an entity named Plummer Exploration, Inc. Under the terms of both 2003 contracts Chestnut was to be hired by Plummer Exploration Inc. as "operator" of the well to be drilled but was not a party to either agreement. Mark Plummer is the president of both Chestnut, Inc. and Plummer Exploration Inc. Doc. 25, att. 2.

Despite some initial success well operations on the Layne #20 Well were ultimately unsuccessful and on August 3, 2004, the plaintiff was sent a letter requesting approval of and a contribution for an "Additional Assessment" in order to facilitate the costs of a proposed fracture stimulation in an attempt to bring the Layne #20 Well "on line." *Id.* The plaintiff agreed by letter dated August 4, 2004. *Id*. at p. 44. The fracture stimulation was performed but failed to produce the desired results.

Thereafter, on August 26, 2005, the plaintiff received another solicitation from Mark Plummer, acting on behalf of Chestnut. It is this letter that formed the basis of this lawsuit and is referred to hereafter as "the 2005 letter agreement."  Attempting again to obtain further contribution and approval for a recompletion of the Layne #20 Well, the letter read in relevant part:

> Dear Earl,
>
> This letter is to confirm our conversation and agreement which we made today. Our records indicate that you can purchase 5 units in the Layne #20

> Recompletion Additional Assessment for a purchase price of $1,900 per unit ($9,500 total). I will also sell an additional 5 units to you out of my inventory at $950 per unit. This will make your total purchase in the Layne #20 Recompletion of 10 units at a total price of $14, 250. This will give you the rights to 10 units (which equals 10% working interest) in all zones that we will attempt to produce in the Layne #20 in the future. Please return to [*sic*] this letter agreement and your check in the return envelope for your participation.

*Id.* at p. 47.  As requested Richey signified his approval, signed the 2005 letter agreement, and returned it with a check for the requisite amount ($14,250) enclosed. Doc. 1, att. 1, pp. 8-9.

After the 2005 letter agreement was executed, the defendants sent the plaintiff two additional letters, one on January 10, 2007, and another on February 12, 2007. The inside salutations were directed to "Layne #20 Partner" and also requested that the plaintiff again approve and provide yet more contributions for another "Additional Assessment" this time for the implementation of a "sidetrack" operation to facilitate production of the well. Neither of these subsequent letters appears to reflect the plaintiff's 10 units purportedly acquired through the 2005 letter agreement and instead only reference the 3 units he had initially purchased.  The plaintiff did not respond to either of these two letters. Doc. 25, att. 2, p. 5. Nevertheless, the sidetrack was authorized by a majority of the investors and later proved to be successful. The well began producing but the plaintiff never received payments for any production.

On August 14, 2013,  counsel for Richey made demand on Chestnut for an accounting of all production from all zones found in the Layne #20 Well since the 2005 letter agreement.  By letter dated August 27, 2013, counsel for Chestnut responded that Richey was not entitled to any of the proceeds of Layne #20's production because he had not approved or provided a contribution for the "Additional Assessment" in order to facilitate the sidetrack operation and thus was not entitled to such proceeds.

In September, 2013, the plaintiff filed a petition in state court alleging that that the Layne #20 Well had been operating since March 16, 2008, but that he had not been paid any of the proceeds of production from this well or in any other zones found in the Layne #20 Well despite the fact that Plummer had offered and sold to him a ten percent (10%) working interest in "*all zones to be produced in the Layne #20 Well in the future*." Doc. 1, att. 1, p. 3 (emphasis added). In his prayer for relief, the plaintiff sought an accounting for all production from the Field Wide Unit since August of 2005, ten (10%) percent of the proceeds from the Layne #20 Well as well as all production from all zones in the Upper Hackberry reservoir with interest, and attorney fees and penalties. Doc. 1, att. 1, pp. 6-7.

The case was removed to this court in June of 2014. *See* Doc. 1. Shortly thereafter Plummer filed a Motion to Dismiss For Lack of Personal Jurisdiction which motion was denied. The district court held that Plummer had purposefully availed himself of the benefits of this state and had thereby subjected himself to the personal jurisdiction of its courts when he agreed to sell his personal interests in the Layne #20 Well as stated in the 2005 letter agreement. In his ruling Judge Trimble noted that:

> [w]hile…there is a Texas choice of law provision in a 2003 joint venture agreement and a preformation subscription agreement, this alone does not detract from the fact that Louisiana mineral rights are involved and this state has a legitimate and reasonable interest in providing a forum for the sale of mineral interests in this state.

Doc. 21, p. 8. The defendants now seek to transfer the case to Collin County, Texas on the basis of those 2003 agreements.

    B. *Arguments*

The defendants move for a transfer of this matter to Collin County, Texas because they claim that the plaintiff is bound to the forum selection clauses found in the 2003 Preformation Subscription and Joint Venture Agreements since his claims to the 10% working interest in the

Layne #20 Well "relate to" those agreements. Doc. 25, att. 1, p. 4-5. Additionally defendants argue that no exceptional circumstances exist that would prevent the application of the forum selection clauses. Doc. 25, att. 1.

The plaintiff asserts that the forum selection clause does not apply to this case because neither Chestnut nor Plummer are parties to the 2003 agreements and thus neither of the defendants can enforce their provisions. Additionally, says the plaintiff, his claims do not in any event "relate to" those agreements but instead arise out of the 2005 letter agreement between Chestnut Inc., Plummer, and plaintiff. Plaintiff maintains the 2005 letter agreement is a distinct agreement separate and apart from either the Joint Venture Agreement or the Preformation Subscription Agreement. Doc. 27.

## II.
### LAW & ANALYSIS

According to the United States Supreme Court, when a defendant seeks to enforce a forum-selection clause by filing a motion to transfer pursuant to 28 USC §1404(a), "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581, (2013) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S. Ct. 2239, 2246, 101 L. Ed. 2d 22 (1988)). Nonetheless, that rule is only applicable if a valid forum-selection clause applies. *Id*. at n. 5. Thus, we must first assess whether the forum selection clause the defendants' seek to enforce is valid and applicable to the plaintiff's claim. If it is, then the parties' prior chosen forum deserves substantial weight. If it is not, then we need not make any special considerations but must proceed as we would in "the typical case not involving a forum-selection clause…[and] evaluate both the convenience of the parties and various public-interest considerations. *Id*. (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, n. 6 (1981)).

Because we agree with the plaintiff that the 2005 letter agreement is separate from the 2003 Preformation Subscription and Joint Venture Agreements, we find that the forum selection clause the defendants seek to enforce is inapplicable. The plaintiff's claims are based entirely on the 2005 letter agreement seeking recognition of an ownership interest as that letter purports to convey and payment for production in accordance with that ownership interest. The letter does not contain a forum selection clause and neither does it reference the earlier Joint Venture or Preformation Subscription or attempt to incorporate the provisions of those earlier agreements into the one found in the 2005 letter agreement. Plaintiff does not seek to enforce or claim a breach of any provision of the Preformation Subscription or the Joint Venture Agreements but rather seeks only a declaration of his rights with respect to the 2005 letter agreement.

Given our conclusion that there is no forum selection agreement in the contract sued upon there is no need for us to consider whether exceptional circumstances exist that would warrant ignoring that forum selection.

### III.
### CONCLUSION

For the reasons stated above, the defendants' Motion to Transfer Venue is hereby **DENIED.**

THUS DONE AND SIGNED in Chambers this 23rd day of March, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE